**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| James K. )<br>)<br>       Plaintiff, )<br>)<br>   v. )<br>)<br>)<br>Martin O'Malley, )<br>Commissioner of Social Security, )<br>)<br>       Defendant. ) | Case No.: 21-cv-50041<br><br>Magistrate Judge Margaret J. Schneider |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff, James K., seeks review of the final decision of the Commissioner of the Social Security Administration denying his disability benefits. The parties have filed cross motions for summary judgment [16], [20]. For the reasons set forth below, Plaintiff's motion for summary judgment [16] is denied and the Commissioner's motion for summary judgment [20], is granted. The final decision of the Commissioner denying benefits is affirmed.

**BACKGROUND**

A. Procedural History

James K. ("Plaintiff") protectively filed for supplemental security income on May 17, 2018. R. 113. This application alleged a disability beginning on June 30, 2011. R. 114. The Social Security Administration ("Commissioner") denied his application on August 10, 2018, and upon reconsideration on February 15, 2019. R. 123, 142. Plaintiff filed a written request for a hearing on March 2, 2019. R. 205. On August 1, 2019, a hearing was held by Administrative Law Judge ("ALJ") Kevin Plunkett where Plaintiff appeared and testified. R. 146. Plaintiff was represented by counsel. *Id.* On October 17, 2019, ALJ Plunkett issued his written opinion denying Plaintiff's claim for supplemental security income. R. 146-156. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council granted his request on December 17, 2019, to allow Plaintiff the opportunity to comment on an examination report received after the hearing. R. 163-164. ALJ Jessica Inouye then held a hearing on May 6, 2020, to provide Plaintiff with this opportunity. R. 169. Again, Plaintiff appeared and testified, and was represented by counsel. *Id.* Susan A. Entenberg, an impartial vocational expert, also appeared and testified. *Id.*

On May 22, 2020, the ALJ issued her written opinion denying Plaintiff's claim for supplemental security income. R. 169-185. Again, Plaintiff appealed the decision to the Appeals Council, but the Appeals Council denied his request on November 2, 2020. R. 1-6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [8]. Now before

the Court are Plaintiff's opening brief [16], the Commissioner's motion for summary judgment and response to Plaintiff's brief [20], and Plaintiff's reply [23].

    B.  The ALJ's Decision

In her ruling, ALJ Inouye applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since the application date of May 17, 2018. R. 171. At step two, the ALJ found that Plaintiff had the following severe impairments: depression, anxiety, personality disorder, posttraumatic stress disorder, and substance use disorder including opioids, heroin, fentanyl, benzodiazepine, and cocaine. *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ evaluated the Paragraph B criteria and found Plaintiff had a moderate limitation in understanding, remembering, and applying the information, and in interacting with others as well as marked limitations in concentrating, persisting or maintaining pace and adapting or managing oneself. R. 172. Based on these paragraph B determinations, the ALJ found that Plaintiff had a combination of impairments that met section 12.08 of 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.* The ALJ found that even absent substance use, Plaintiff's remaining severe impairments created limitations that would cause more than a minimal impact on his ability to perform basic work activities. R. 173. However, the ALJ found that in the absence of substance use, he would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR § 404, Subpart P, Appendix 1. *Id.*

Before step four, the ALJ found that Plaintiff, if he stopped the substance use, had a residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following limitations: a routine work environment that involves only simple work-related decisions and no more than occasional changes in the work, no work requiring interactions with customers/general public, no team work or tandem work, no more than occasional interaction with coworkers, no hourly timed tasks or fast-rate work production, and two-hour increments necessitating attention and concentration throughout the typical workday. R. 175. Plaintiff had no past relevant work, so the ALJ continued to step 5. R. 183. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including janitor, hospital cleaner, and hotel housekeeper. R. 184. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from May 17, 2018, through the date of decision, May 22, 2020. *Id*.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads

to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted). *See also Warnell*, 97 F.4th at 1054.

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence, or deciding questions of credibility. . . . [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

## DISCUSSION

In his motion, Plaintiff argues that: (1) his substance use was not a material factor warranting only moderate limitations in each of the Paragraph B criteria, (2) the ALJ's analysis of Plaintiff's subjective symptoms was flawed, and (3) the ALJ erred in evaluating the medical opinion evidence. The Court finds that the ALJ's determinations were supported by substantial evidence. Therefore, the decision is affirmed.

### A. Paragraph B conclusions less substance use

Plaintiff asserts that the ALJ incorrectly found that he would not meet or equal Listing 12.08 if he stopped his substance use. Pl.'s Mot. at 2. In support of this, Plaintiff argues the ALJ's Paragraph B determinations less the substance use was improperly found to be only moderate in each of the four domains. *Id.* at 3.

At step three, the ALJ analyzed the paragraph B criteria absent Plaintiff's substance use. R. 173-174. To satisfy the paragraph B criteria, Plaintiff must show an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404, Subpart P, Appendix 1. The ALJ found that Plaintiff was only moderately limited in each of the categories if he stopped the substance use. R. 173.

Under the Act, "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would… be a contributing factor material to the Commissioner's determination that the individual is disabled. 42 U.S.C. § 423(d)(2)(C). "When an applicant for disability benefits both has a potentially disabling illness and is a substance abuser, the issue for the [ALJ] is whether, were the applicant not a substance abuser, [he] would still be disabled." *Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006). If drug or alcohol use is material to the claimant's disability, the claimant is found not disabled. SSR 13-2p, 2013 WL 621536, at *4 (Feb 20, 2013). Plaintiff has the burden of proving disability despite his substance use but the ALJ is still required to "provide sufficient information… that explains the rationale supporting

3

their determination of the materiality of [Drug and Alcohol Abuse]." SSR 13-2p, at *2.

The ALJ analyzed each of the Paragraph B criteria in turn while taking Plaintiff's substance use into consideration. In finding that Plaintiff has a moderate limitation in understanding, remembering, and applying information, the ALJ noted that Plaintiff had average intelligence according to his consultative examination and enjoyed reading according to his own reports. R. 173. She also found that Plaintiff was able to make it to his therapy appointments using public transportation, had the ability to complete therapy homework assignments, and was able to work as a housekeep and caretaker. *Id.* As to interacting with others, the ALJ again found Plaintiff to have a moderate limitation absent substance abuse. R. 174. The ALJ noted that while Plaintiff reported having difficulties being around others, he was active in group therapy and even enjoyed these sessions. She also pointed to his ability to use public transportation, babysit for his friend, interact with his mother, and act appropriately with the community when not using substances, as evidence of his ability to be around others. *Id.*

As to concentrating, persisting or maintaining pace, the ALJ found Plaintiff had a moderate limitation. The ALJ acknowledged his reported difficulties, such as with focus and memory, but also noted his logical thought process, apparent focus during his testimony, and his ability to do research on the internet. *Id.* Regarding the ALJ's finding that Plaintiff had a moderate limitation in adapting or managing oneself, the ALJ noted that Plaintiff was able to maintain personal hygiene, prepare meals, do laundry, and engage in exercise on a regular basis. Therefore, the ALJ found that the B criteria was not met due to findings of moderate limitation in all four criteria.

Plaintiff argues otherwise – that the facts cited in the ALJ's decision do not outweigh the other evidence that supports Plaintiff's limitations. Plaintiff cites his limited online research, his failure to complete homework on several occasions, his inability to take public transportation alone, his need for assistance in completing his daily activities, his scattered thought process, and his "toxic" relationship with his employer. Pl.'s Mot. at 3-6. Plaintiff argues these facts support a finding that he has more than moderate limitations in these categories.

The ALJ must create a logical bridge between the record and her Paragraph B conclusions. *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). This requirement does not mean that the ALJ must specifically address every piece of evidence but rather enough "evidence as a reasonable mind might accept as adequate to support" her conclusion. *Id.* In reviewing the ALJ's decision at step three, the decision must be read as a whole. *See Buckanon on behalf of J.H. v. Astrue*, No. 08-C-221, 2009 WL 10699462, at *3 (E.D. Wisc. Jan. 8, 2009) ("[A]n ALJ's decision is to be read as a whole, and after reading the ALJ's decision in its entirety, the court finds that the ALJ's analysis…provides an adequate explanation of the ALJ's conclusion that the plaintiff's impairments, or combination of impairments, do not meet or medically equal a listing in the Listing of impairments.").

Here, the ALJ did exactly what was required of her. For each paragraph B conclusion, she provided adequate evidentiary support as a reasonable mind might accept her findings and, therefore, built a logical bridge from the record to her conclusions as required. Therefore, the ALJ relied on substantial evidence to support the step-three finding that plaintiff's mental impairments, without substance abuse, did not meet or medically equal Listing 12.08.

B. **Subjective symptom analysis**

Plaintiff also challenges the ALJ's analysis of his subjective symptoms, arguing that the ALJ misunderstands mental illness and the "comorbidity of drugs and alcohol with mental disorders." Pl.'s Mot. at 7-8. However, Plaintiff fails to demonstrate that the ALJ's evaluation was patently wrong.

When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5-8. This Court shall give an ALJ's evaluation of a claimant's subjective symptom allegations "special deference" and "[a]s long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017); *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Further, a reviewing court should rarely disturb a subjective symptom evaluation because it lacks "the opportunity to observe the claimant testifying." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). It is Plaintiff's burden to show that an ALJ's subjective symptom analysis is patently wrong. *See Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018).

The ALJ acknowledged Plaintiff's testimony about his impairments, such as inability to control his mood, posttraumatic stress episodes several times a week, trouble leaving the house and being around others, and difficulty with anxiety that was not improved with medication. R. 176. However, the ALJ determined that the record did not support crediting his allegations of disabling impairments. She noted Plaintiff's hospitalizations were often a result of noncompliance with treatment or substance use rather than his impairments. R. 181. She also pointed to multiple treatment records indicating less severe symptomology. *Id.* The ALJ also properly considered other factors including conflicting information in the record regarding Plaintiff's daily activities and his ability to care for herself, such as the fact that he testified that he was able to get along with his coworkers, read, prepare meals and wash dishes, and take public transportation to his appointments. R. 176. The ALJ collectively weighed these factors in discounting Plaintiff's testimony regarding his subjective symptoms. The ALJ's weighing of these factors was sound and not patently wrong. *See Lynida W. v. Saul*, No. 19 C 2021, 2020 WL 2542156, at *5-7 (N.D. Ill. May 19, 2020).

As part of this evaluation, the ALJ did infer that some of the mental health symptom intensity alleged by Plaintiff may be exacerbated by Plaintiff's substance use. R. 181. Plaintiff argues that this is an unfair dismissal of his subjective symptoms as this causal relationship *could* be the opposite in that Plaintiff's mental illness may cause increased substance abuse because he turns to controlled substances to mitigate the symptoms when they are at their most extreme. Pl.'s Mot. At 8. However, Plaintiff fails to explain how this is patently wrong and warrants remand. As Plaintiff himself stated, "[t]he ALJ's inferences that the drug use causes increased symptoms could be correct. It is also possible that… Kahn's mental illness may cause increased substance abuse." Pl.'s Mot. at 8. Plaintiff's own statement suggests that there is sufficient evidence "as a reasonable mind might accept as adequate to support" the ALJ's conclusion that his substance use causes increased symptoms which is precisely what is required. *Moore*, 743 F.3d at 1120-21. Moreover,

5

it was Plaintiff's burden to prove his mental impairments were disabling when not abusing substances. *Harlin v. Astrue*, 424 Fed. App'x 564, 567 (7th Cir. 2011) Despite this, he cites to no objective evidence to support his claim that his mental impairments may have increased his drug use. Accordingly, the Court finds no patent error in this reasoning.

### C. Medical opinion evidence

Finally, Plaintiff argues the ALJ erred in her evaluation of the opinion evidence. Pl.'s Mot. at 12. He contends the ALJ found the opinions of all who treated him – LPC Stephanie Johnson, Wesley Colten, and Charlotte Reed, LCPCP – to not be persuasive and instead relied on the consultative examiner's unsupported "suppositions." *Id.* at 13-14. Plaintiff states that the ALJ relied on inconsistencies to discredit these treating opinions when no such inconsistencies existed. *Id.*

Since Plaintiff filed his case after March 17, 2017, the ALJ was required to evaluate each of the opinions under the regulations set out in 20 C.F.R. § 404.1520c. Under these regulations, the ALJ evaluates the persuasiveness of all medical source opinions using the following factors: supportability, consistency, relationship with claimant, specialization, and any other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors to be considered in this evaluation, and as a result, the ALJ must "[e]xplain how she considered the supportability and consistency factors" in particular. *See* C.F.R. § 404.1520c(b)(2); *Bakke v. Kijakazi*, 62 F.4th at 1067-68. In completing this evaluation, "[a]n ALJ need only minimally articulate[] her reasoning for the persuasiveness of the medical opinion." *Desotelle v. Kijakazi*, No. 22-1602, 2023 WL 4146246, at *2 (7th Cir. 2023) (quoting *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)) (internal quotations omitted).

For a medical opinion to be supportable, it must be based on "the objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." *Id.* For an opinion to be consistent, it must be, reductively, consistent with the record. 20 C.F.R. § 404.1520c(c)(2). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.*

The ALJ explicitly considered both the supportability and consistency of each of Plaintiff's treating physicians' opinions in deciding not to give them persuasive weight. As to LPC Johnson, the ALJ found that her opinion was not supported by objective medical evidence as Johnson opined that Plaintiff would be absent from work more than four times per month despite "no evidence suggesting" this as well as her failure to "provide specific examples and dates" to support her conclusions. R. 181. The ALJ also addressed Johnson's consistency and found the opinion to not only be internally inconsistent but also inconsistent with the rest of the record as Johnson "fail[ed] to address the claimant's substance abuse, of which he had an extensive history, and its possible effect on his symptoms, an issue that has been found to be relevant in a review of the medical evidence." *Id.*

As for Wesley Colten, the ALJ found that this opinion was also unsupported and inconsistent. As to supportability, the ALJ found that Mr. Colten's recommendations were unsupported because they were much more severe than even Ms. Johnson's who she already found to be unsupported. R. 182. The ALJ also found that Mr. Colten's opinion was inconsistent as he opined to an inability to travel despite Plaintiff's ability to use public transportation to attend therapy. *Id.* The ALJ also found this opinion to be inconsistent as Mr. Colten opined that Plaintiff "had extreme limitations in following and understanding instructions and minimal capacity to adapt to changes in his environment" but also opined that Plaintiff "could manage benefits in his own best interest." *Id.*

The ALJ also explicitly considered the supportability and consistency of LCPCP Reed's opinion in deciding to give the opinion not persuasive weight. As to supportability, the ALJ found that Ms. Reed's recommendations were unsupported because they "do not provide much in terms of addressing the claimant's substance use, despite his long and troubled history with this issue." *Id.* The ALJ also found Ms. Reed's opinion was inconsistent because the RFC limitations she suggested were contradicted by the medical history and limitations in Plaintiff's record, such as his ability to serve as a caretaker for his mother and his capability to use public transportation and interact with the general public. *Id.*

In making his argument, Plaintiff takes issue with the ALJ's finding that "*all* of the opinions that treated [Plaintiff] in a treating capacity" were found least persuasive, seemingly suggesting that the ALJ must accept at least one treating opinion as persuasive. An ALJ may not reject all the available medical opinions and leave the record devoid of a basis to support an RFC determination. *McDavid v. Colvin*, No. 15 C 8829, 2017 WL 902877, at *5 (N.D. Ill. Mar. 7, 2017); *Daniels v. Asture*, 854 F. Supp. 2d 513, 523 (N.D. Ill. 2012). But the treating physicians are not given any special weight, rather, the physician's relationship with Plaintiff is simply one factor to be considered. 20 C.F.R. § 404.1520c. The ALJ thus met her low burden of "minimally articulating" her consideration of all the medical opinions' supportability and consistency.

The Court finds that the ALJ's opinion is supported by substantial evidence. The ALJ's Paragraph B determinations were supported by substantial evidence. Plaintiff has not demonstrated that his subjective symptoms complaints should have been given more weight. And the ALJ sufficiently analyzed each of the medical opinions for supportability and consistency.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [16] is denied and the Commissioner's motion for summary judgment [20], is granted. The final decision of the Commissioner denying benefits is affirmed.

Date: September 26, 2024     ENTER: _____
United States Magistrate Judge

7